# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| LAYNE CHRISTENSEN COMPANY & LAYNE HEAVY CIVIL, INC., | ) ) ) |
| Plaintiffs, | ) NO. 3:17-cv-01236 |
| v. | ) ) JUDGE CAMPBELL ) MAGISTRATE JUDGE FRENSLEY |
| CITY OF FRANKLIN, TENNESSEE, | ) ) |
| Defendant. | ) |

## MEMORANDUM

Pending before the Court is Plaintiffs' Motion for Summary Judgment. (Doc. No. 61). Defendant filed a response (Doc. No. 69), Plaintiffs filed a reply (Doc. No. 82), and Defendants filed a sur-reply (Doc. No. 96). The parties have each filed statements of fact and responses thereto (Doc. Nos. 62, 70, 83) (together the Statement of Facts ("SOF")).

The parties in this case seek a declaration from the Court under 28 U.S.C. § 2201, as to whether one or both Plaintiffs are financially liable for the allegedly defective work performed by W.L. Hailey & Company, Inc. in 2002-04. (*See* Complaint, Doc. No. 1; Counterclaim, Doc. No. 17). For the reasons stated below, Plaintiffs' Motion for Summary Judgment is **DENIED**.

## I. BACKGROUND

Layne Christenson Company is a Delaware corporation with a principle place of business in The Woodlands, Texas. (SOF, Doc. No. 83, ¶ 1). Layne Christensen is focused on water resources and related infrastructure and has business operations throughout the United States and abroad. (*Id.*, ¶ 2). Layne Christensen wholly-owns multiple subsidiaries, including Layne Heavy Civil, Inc. (*Id.*, ¶¶ 3, 4). Until its name change in 2012, Layne Heavy Civil was

named Reynolds, Inc. (*Id.*). Layne Heavy Civil is incorporated in Indiana, but like Layne Christensen, has a principle place of business in The Woodlands, Texas. (*Id.*). Layne Heavy Civil wholly-owns W.L. Hailey & Company, Inc. ("Hailey"). (*Id.*, ¶ 9). Hailey is a Tennessee corporation that, like Layne Christensen and Layne Heavy Civil (together, "Layne"), has a principle place of business in The Woodlands, Texas. (*Id.*, ¶ 5).

In 2002, before Hailey was owned by Layne, Hailey entered into a contract with the City of Franklin to construct a gravity sewer pipeline. (*Id.*, ¶ 7). Hailey last worked on the project in 2003 or 2004. (*Id.*, ¶ 8).

In October 2009, what was then Reynolds made a cash purchase of 100% of the stock of Hailey, and Hailey became a wholly-owned subsidiary of Reynolds. (*Id.*, ¶¶ 9-11). In 2012, as a part of a marketing initiative branded "One Layne," Layne changed the names of both Reynolds and Hailey to Layne Heavy Civil, Inc. (*Id.*, ¶¶ 4, 52-53, 122-124). Reynolds, Inc.'s name was legally changed to Layne Heavy Civil, Inc., (*Id.*, ¶ 4) while Hailey retained the legal name W.H. Hailey & Company, Inc., but used the name Layne Heavy Civil, Inc.[1] (*Id.*, ¶¶ 54-56, 124).

After the name change in 2012, the Hailey name was no longer used in the market. (*Id.*, ¶ 125). Work previously bid under Hailey's name and licenses was bid by Layne Heavy Civil,

---

[1] The name change announcement stated: "[Hailey] is pleased to announce that our business name will be changing from W.L. Hailey & Company, Inc. to Layne Heavy Civil, Inc. effective May 1, 2012. This change is in name only. Our business structure as well as our Federal Tax ID [] will remain unchanged." (Doc. No. 71-15). Internally, Layne also referred to Hailey as the "Midsouth Construction" division of Layne Heavy Civil, Inc. (SOF, Doc. No. 83, ¶ 57).

2

Inc. (*Id.*, ¶ 126). Hailey's various state contractor licenses were not renewed beginning in 2012; its Tennessee contractor license expired on November 30, 2013. (*Id.*, ¶ 135).

Franklin asserts that Hailey was not, in fact, a separate entity from Reynolds, Inc. Alternatively, Franklin argues that between the acquisition in 2009 and the sale of Hailey's remaining assets in 2017, Reynolds, Inc. (after 2012, Layne Heavy Civil), and Hailey combined operations such that they were effectively one company. To be sure, distinctions between the two companies become somewhat muddied after 2012 when Layne changed the names of both Reynolds and Hailey to Layne Heavy Civil, Inc., as part of a the "One Layne" marketing initiative. (See, SOF, Doc. No. 83, ¶¶ 4, 52-53, 122-124).

Following the acquisition, Layne exercised control over Hailey in the following ways: (1) Hailey sought approval and authority from Layne to bid work (SOF, Doc. No. 83, ¶ 108); (2) Hailey's finances were managed in the centralized Layne accounting system (*id.*, ¶ 109); (3) Layne's corporate personnel managed Hailey's financial reporting for corporate accounting, SEC reporting, and tax preparation (*id.*); (4) Layne closed Hailey's bank account and managed Hailey's cash flow "as part of its corporate treasury function" (*id.*, ¶ 111); and (5) Layne consolidated its acquired companies, including Hailey, into Layne's statements of income and filed consolidated tax returns and SEC filings (*id.*, ¶¶ 118-21). Layne stated that the finances of its subsidiaries were kept separately within its accounting system and that Layne's system tracked and reported revenue, income, and expenses belonging to Hailey. (*Id.*, ¶21 114).

Layne frequently referred to the companies as one, stating that the certain companies acquired by Layne, including Hailey, "have merged into Reynolds." (*Id.*, ¶¶ 101, 102 (Layne's former Controller and CEO, Andy Atchison, testified that the statement about companies

3

having merged into Reynolds was accurate with respect to the "operational combination" of the companies)). Hailey's former President, Don Ackerman, testified that after the 2009 acquisition, "Hailey [] didn't exist." (*Id*., ¶ 117).

By 2012, the officers and directors of Hailey also served as officers and directors of Layne Heavy Civil, Inc. (*Id*., ¶ 11). Layne's legal department made decisions about Hailey's board of directors membership and Layne Heavy Civil, as sole shareholder of Hailey, appointed the members of the Hailey board of directors. (*Id*., ¶¶ 11, 189). Les Archer, Layne Heavy Civil's former President, who was identified in places as President of Hailey, testified he was never an officer or employee of Hailey and was not aware Hailey even had officers. (*Id*., ¶ 41).

In April 2017, Layne Christensen sold substantially all of the fixed assets of its Heavy Civil division, including assets owned by Hailey. (*Id*., ¶ 62). The asset purchase agreement was signed by Michael Anderson on behalf of Layne Christensen, Layne Heavy Civil, Hailey, and other selling entities. (*Id*., ¶ 20, 63). The asset sale closed on April 30, 2017, and resulted in approximately $3.5 million in total proceeds, which was not separately allocated to the selling companies. (*Id*., ¶ 63).

On May 9, 2017, Franklin notified Plaintiffs by letter of alleged defects in the project performed by Hailey in 2002-04. (*Id*., ¶¶ 66-68). The May 9, 2017 letter was the first notice provided to Plaintiffs of any purported defect or deficiency in Hailey's work on the project. Plaintiffs did not accept responsibility for the sewer pipe failure or participate in the repairs. (*Id*., ¶ 198). Plaintiffs filed this case on September 7, 2017, seeking a declaratory judgment that Layne could not be held liable for any judgment Franklin might receive against Hailey. (*Id*., ¶ 199; Compl., Doc. No. 1). On November 2, 2017, Franklin filed a Counterclaim also

seeking a declaration as to whether one or both Plaintiffs are liable based on piercing the corporate veil or successor liability with respect to any liability Hailey might have to Franklin. (Doc. No. 17). Franklin brought suit in Tennessee state court against Hailey, the project engineer, and the pipe manufacturer on November 17, 2017. (Doc. No. 83, ¶ 200).

Plaintiffs filed a motion for summary judgment arguing that neither Layne Christenson nor Layne Heavy Civil can be held financially liable for the work performed by Hailey in 2002-04 when Hailey was unaffiliated with Plaintiffs. Plaintiff contend the legal theories presented by Franklin—piercing the corporate veil, successor liability, and fraudulent transfer—fail as a matter of law. (Doc. No. 61).

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's claims. *Id.*

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not

5

weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper question of fact. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the trier of fact could reasonably find for the nonmoving party. *Rodgers* 344 F.3d at 595.

In ruling on a motion for summary judgment, "[a] district court is not … obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989); *see also*, *Shorts v. Bartholomew*, 255 F. App'x 46, 50 (6th Cir. 2007) ("[W]e need not scour the record or make a case for a party who has failed to do so on his own behalf …"). In determining whether a genuine issue of material fact exists on a particular issue, the court is entitled to rely only upon those portions of the verified pleadings, depositions, and answers to interrogatories, and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

## III. ANALYSIS

Federal Courts sitting in diversity apply forum choice-of-law principles. *The Andersons, Inc. v. Consol, Inc*., 348 F.3d 496, 501 (6th Cir. 2003). Tennessee applies the "internal affairs" doctrine, applying the law of the state of incorporation to determine whether to pierce the corporate veil. *See Hicks. v. Lewis*, 148 S.W.3d 80, 84 (Tenn. Ct. App. 2003). Hailey is a Tennessee corporation, therefore Tennessee law controls.

Franklin has asserted several legal theories under which it seeks to hold Layne liable for alleged deficiencies in Hailey's pre-acquisition contract performance: legal merger, piercing the corporate veil, and as a successor corporation. Plaintiffs contend each of these theories fail and there is no theory under which Plaintiffs could be liable for the work performed by Hailey in 2002-04. To defeat summary judgment Franklin must show a genuine issue of material fact as to at least one of the theories of liability.

The parties have listed over 200 "undisputed" material facts, many of which are actually in dispute. (*See* SOF, Doc. Nos. 62, 70, 83). Central to the dispute is whether and to what extent Layne controlled or assumed the assets and operations of Hailey. This determination by itself is riddled with questions of fact. The resolution of these facts and their consequential legal application is not one that can be determined on summary judgment. As discussed below, the Court finds Franklin has presented sufficient evidence to survive the motion for summary judgment on the theory of successor liability that Layne is a "mere continuation" of Hailey. To narrow the legal questions to be presented at trial, the Court has also considered Franklin's remaining theories.

**A. Successor Liability Exceptions**

"Generally, a corporation that purchases the assets of another corporation does not automatically become liable for the selling company's obligations." *Mapco Exp., Inc. v. Interstate Entertainment, Inc.*, No. 3:08-CV-1235, 2011 WL 12556959, at *14 (M.D. Tenn. Aug. 11, 2011) (citing *Johnson v. Tanner-Peck, LLC*, No. W2009-02454-COA-R3-CV, 2011 WL 1330777, at *13 (Tenn. Ct. App. Apr. 08, 2011). There are four recognized exceptions to this rule: (1) where the purchasing corporation expressly or implicitly agrees to assume the

7

selling corporation's liabilities; (2) where the transaction amounts to a consolidation or merger of the two corporations; (3) where the purchasing corporation is a mere continuation of the selling corporation; and (4) where the transaction is entered into fraudulently, in order to escape liability for the obligations of the selling corporation. *Id*. Franklin alleges that a genuine dispute of material fact exists as to whether the first three exceptions apply. The Court considers them in order.

    1. <u>Assumption of Liabilities</u>

Franklin argues Layne has assumed Hailey's liabilities because Layne executed a guarantee agreement in November 2009 agreeing to "pay any and all debts and obligations" so that Hailey could obtain a Tennessee contractor's license. (SOF, Doc. No. 83, ¶ 148). The guarantee, which was set to expire upon the expiration of Hailey's contractor license, expired in 2013. (*Id*., ¶¶ 147, 148). Franklin adds that Layne Heavy Civil entered into a settlement with a customer for which Hailey served as a subcontractor. (*Id*., ¶¶ 151-153).

Layne responded that the guarantee agreement cannot give rise to liability for conduct that is unrelated to the term of the guarantee and that communications and settlement with a third party have no effect on Layne's liability with regard to Franklin. The court agrees.

Implied assumptions are analyzed using theories of applied-in-fact and applied-in-law contracts. *Hopewell Baptist Church v. Southeast Window Mfg. Co*., No. E2000-02699-COA-R3-CV, 2001 WL 708850, *5 (Tenn. Ct. App., Jun. 25, 2001). Contracts implied-in-fact require mutual assent or intent to contract, which cannot be accomplished through the unilateral action of one party. Contracts implied-in-law require: "A benefit conferred upon the defendant by the plaintiff, appreciation by the defendant of such benefit, and acceptance of such benefit under

8

such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof." *Id*. (quoting *Angus v. City of Jackson*, 968 S.W.2d 804, 808 (Tenn. Ct. App. 1997). Franklin has not made any argument or provided any evidence that it has an implied contract with Layne such that Layne is responsible for Hayley's work on the project.

    2. De Facto Merger

In a *de facto* merger, "there is a sale of substantially all of one corporation's assets in exchange for the stocks and bonds of the purchasing corporation." *Signature Combs, Inc. v. U.S.*, 331 F. Supp. 2d 630 (W.D. Tenn. 2004) (quoting *Jennings Neff & Co. v. Crystal Ice Co.*, 159 S.W. 1088, 1089 (1913)). The selling company retains no assets and goes out of business, but its legal entity remains. *Id*.

Seemingly acknowledging that the acquisition of Hailey does not evidence an exchange of assets for stock, Franklin urges the Court to apply the analysis in *Carrier Corp. v. Piper*, 2:05-cv-02307, 2009 WL 10664807 (W.D. Tenn. Aug. 31, 2009). The *Carrier* court did not strictly require an asset-for-stock-exchange, and instead considered a list of "hallmarks" of a *de facto* merger adopted by the Sixth Circuit. 2009 WL 10664807 at * 5 (citing *In re Wright Enterprises*, 77 F. App'x 356, 369 (6th Cir. 2003).

In *Wright*, the Sixth Circuit listed the factors for determining whether a transaction amounts to a *de facto* merger: "(1) continuation of the enterprise of the seller corporation, so that there is a continuity of management, personnel, physical location, assets, and general business operations; (2) continuity of shareholders which results from the purchasing corporation paying for the acquired assets with shares of its own stock, this stock ultimately coming to be held by the shareholders of the seller corporation so that they become a constituent

9

part of the purchasing corporation; (3) the seller corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible; and (4) the purchasing corporation assumes those liabilities and obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation." *Wright*, 77 F. App'x at 369 (citing *Bud Antle, Inc. v. Eastern Fords, Inc.*, 758 F.2d 1451, 1457-58 (11th Cir. 1985)).

Franklin argues that "almost all" of the "hallmarks" of a *de facto* merger have been satisfied. Franklin asserts the following as evidence of a *de facto* merger: (1) after the acquisition in 2009, Hailey's business was continued through Layne; (2) Hailey ceased its plant and pipe business; (3) Hailey did not renew its contractor's licenses after 2012; and (4) Hailey sold real estate in 2014 and its remaining assets in 2017.

Outside of the *Carrier* decision, the Court cannot find support for the notion that an asset-for-stock exchange is not a required element in a *de facto* merger. Notably, the second *Wright* factor requires a "continuity of shareholders." In *Wright*, there was a continuity of ownership via an exchange of assets for stock. *Id*. Moreover, *Bud Antle*, the Eleventh Circuit case upon which *Wright* relies for its list of factors, clearly states that a continuity of ownership is a requirement of a *de facto* merger: "At the very least, there must be some sort of continuation of the stockholders' ownership interests." 758 F.2d at 1458. Even the Ohio case upon which *Carrier* relies for its conclusion that a transfer of assets for stock is not required, evidenced a continuity of ownership between the two companies. *See Cytec Indus., Inc. v. B.F. Goodrich Co.*, 196 F. Supp. 2d 644, 656 (S.D. Ohio 2002) (parent company dissolved stock of a wholly owned subsidiary and assumed its assets).

The Court finds that Franklin's evidence that Layne assumed the liabilities of Hailey does not establish the elements of a *de facto* merger.

3. Mere Continuation

An acquiring corporation will be deemed a mere continuation of the previous corporation and, therefore, liable for the previous corporation's obligations if: (1) a corporation transfers its assets; (2) the acquiring corporation pays less than adequate consideration for the assets; (3) the acquiring corporation continues the previous corporations business; (4) both corporations share at least one common officer who was instrumental in the transfer; and (5) the previous corporation is left incapable of paying its creditors. *Rxar Co., LLC v. Rheumatology Assocs., P.A.*, No. 3:14-C-0789, 2017 WL 1511045, at *2 (M.D. Tenn. Apr. 27, 2017) (citing *IBC Mfg. Co. v. Velsicol Chem. Corp.*, No. 97-5340, 1999 WL 486615, at *3 (6th Cir. Jul. 1, 1999); *see also*, *Mapco Exp., Inc. v. Interstate Entertainment, Inc.*, No. 3:08-cv-1235, 2011 WL 12556959, at *17 (M.D. Tenn. Aug. 11, 2011).

Franklin contends it has presented evidence of each of these elements sufficient to survive a motion for summary judgment. The Court agrees.

Plaintiff provides evidence that Hailey's assets, including its employees and equipment were transferred to an absorbed by Layne from 2009 to 2017 and that Layne did not pay adequate (or any) consideration for the assets. In August 2012, a Layne employee, James Moffatt, sent an email stating, "[W]e have been moving all Meadors & WLH assets to Layne Heavy Civil. The 'One Layne' program provided the platform do make this move. The assets had previously been retained in Meadors and WLH primarily for tax purposes. Upon completion, all assets will be owned by Layne Heavy Civil[.]" (*Id.*, ¶ 146). Plaintiffs contend

that the bulk transfer of assets out of Hailey to another Layne entity never occurred. (*Id.*). Plaintiffs do not dispute, however, that proceeds from the sales of assets in 2013 and 2014 were deposited into the Layne Christenson corporate account, or that a check for the sale of Hailey equipment was made out to "Layne Christenson Company" as the payee. (SOF, Doc. No. 83, ¶¶ 160, 161). Layne explains that "the proceeds would have been credited, accounted for, and reported as a gain or loss owned by [Hailey]." (*Id.*)

Layne has admitted Hailey did not receive any allocation of the proceeds from the sale of assets to Reycon in 2017. (*Id.*, ¶ 172). Layne's counsel stated, "Layne did not allocate the consideration it received from the Reycon sale to the selling entities." (*Id.*) Jami Phillips, Layne Christenson controller and vice president, testified: "Q: Do you know what part of the consideration that was paid by Reycon was for Hailey's assets? A: No, I do not. It did not matter to us;" and "Q: Do you know whether any amount of the purchase price for this sale was allocated to Hailey? … A: … It was not allocated." (*Id.*).

Plaintiffs argue Franklin has presented no evidence that Hailey received less than adequate consideration. Plaintiffs state that "Franklin needed to show that $15 million was significantly less than the true value of Hailey, in 2009." (Pl. Reply at 7). Plaintiffs also assert that the sale of assets to a third parties in 2014 and 2017 does not meet the second element of the test because the test requires Hailey to have transferred assets to the acquiring corporation, not a third-party, for less than adequate consideration. (*Id.*). Plaintiffs do not accurately characterize Defendant's argument about the 2014 and 2017 sales. Defendants argue that Plaintiffs, in selling assets belonging to Hailey and keeping the proceeds themselves have

effectively transferred those assets to themselves without consideration. Plaintiffs have submitted sufficient evidence to raise a question of fact regarding this element.

To show that Layne continued the business of Hailey, Franklin notes that after Hailey's name was changed to Layne Heavy Civil, Layne did not renew Hailey's state contractor licenses, making it impossible for Hailey to bid or perform work in its own name. It is undisputed that work formerly bid by Hailey was bid by Layne under Layne's licenses. (*Id.*, ¶ 136).

Plaintiffs argue that Defendant has not identified "a Hailey officer (pre-acquisition), who subsequently became an officer of Plaintiffs and was 'instrumental in the transfer.'" (Pl. Reply, Doc. No. 82 at 7). Again, Plaintiffs' focus only on the 2009 acquisition misses the mark. Franklin does not argue that the 2009 acquisition itself constituted a mere continuation, but that after 2009, over time and specifically in 2012 and 2014, Plaintiffs acquired Hailey assets. It is undisputed that at least in 2014 Hailey and Plaintiffs shared officers and directors. For example, Mr. Accetturo served as president of both Hailey and Layne Heavy Civil, Inc. (*Id.*, ¶ 158) ("In 2014, Layne Heavy Civil, Inc. officers also served as W.L. Hailey & Company, Inc. officers" and made the decision to sell former Hailey officer real estate.). Defendant need not provide evidence showing that one of the shared officers or directors was instrumental in the transfer because every single officer and director of Hailey was also an officer or director of Layne Heavy Civil Inc. (*See* Doc. No. 65-23 (2014 Officer and Director Report)).

As to the last element, Franklin has submitted evidence that Hailey is now incapable of paying its creditors. At the time of the 2009 Acquisition, Hailey owned $27 million in assets and had approximately $80 million in annual revenue. (Doc. No. 83, ¶ 173). It is undisputed

that as of fiscal year 2018, Hailey's only asset on the books was a purported intercompany receivable of approximately $2.2 million owed by Layne, which Layne has represented it has no intention of paying to Hailey. (*Id.*, ¶ 174).

The Court finds that Franklin has established evidence to raise a question for the trier of fact as to whether Layne is a mere continuation of Hailey. This determination is itself sufficient to deny Plaintiffs' Motion for Summary Judgment. However, to narrow the issues for trial, the Court considers Franklin's remaining arguments.

**B. Layne and Hailey did not merge.**

The hallmark of a legal merger is that the selling corporation's legal entity disappears. *See* Tenn. Code Ann. § 48-21-102(a) ("The merger shall result in a single survivor."); *Signature Combs, Inc. v. U.S.*, 331 F. Supp. 2d 630, 640 (W.D. Tenn. 2004) (a legal merger is one "in which the selling corporation's legal entity disappears"); *ECIMOS, LLC v. Carrier Corp.*, Case No. 2:15-cv-2726, 2017 WL 9476874 (Feb. 27, 2017) ("following the merger, there can be only one surviving entity").

There is no evidence in the record that the 2009 acquisition effected a legal merger between Layne and Hailey. It is undisputed that Hailey still exists as a legal entity. (SOF, Doc. No. 83, ¶ 5). Moreover, Hailey continued to do business as Hailey for years after the 2009 acquisition. (*Id.*, ¶¶ 125-127). The statements by Layne's CEO that the companies acquired by Layne Heavy Civil, "ha[d] been merged into Reynolds" is not evidence that the companies legally merged. Indeed, Franklin concedes that "Layne[] fail[ed] to comply with the requirements of a formal statutory merger." (Def. Resp., Doc. No. 69 at 19).

## C. Piercing the Corporate Veil

"The principle of piercing the fiction of the corporate veil is to be applied with great caution and not precipitously, since there is a presumption of corporate regularity." *Southeast Texas Inns, Inc. v. Prime Hospitality Corp.*, 462 F.3d 666, 675 (6th Cir. 2006) (citing *Schlater v. Haynie*, 833 S.W.2d 919, 925 (Tenn. Ct. App. 1991)). "There is a presumption that a corporation is a distinct entity, separate from its shareholders, officers, and directors or affiliated corporations, and the party wishing to negate the existence of such a separate entity has the burden of pleading facts sufficient to justify piercing the corporate veil." *Schlater*, 833 S.W.3d at 925 (quoting 18 C.J.S. Corporations § 18). The doctrine of piercing the corporate veil is applied "only in 'extreme circumstances to prevent the use of a corporate entity to defraud or perform illegal acts.'" *Edmunds v. Delta Partners, LLC*, 403 S.W.3d 812, 829 (Tenn. Ct. App. 2013) (quoting *Pamperin v. Streamline Mfg., Inc.*, 276 S.W.3d 428, 437 (Tenn. Ct. App. 2008)).

The parties disagree about which test applies to Franklin's claim that one or both Plaintiffs are liable for the debts of Hailey related to the work performed by Hailey in 2002-04. Plaintiffs argue the Court should apply the test from *Continental Bankers Life Ins. Co. of the South v. Bank of Alamo*, 578 S.W.2d 625 (Tenn. 1979). The *Continental Bankers* test requires that "at the time of the transaction complained of," the parent corporation "exercises complete dominion over its subsidiary" and that "such control must have been used to commit fraud or wrong, to perpetuate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of a third parties' rights." 578 S.W.2d at 632. Franklin urges the

Court to apply the multi-factor test articulated in *FDIC v. Allen*, 584 F. Supp. 386, 389 (E.D. Tenn. 1984)[2]. (Def. Resp., Doc. No. 69 at 27).

Tennessee appellate courts have held that the *Continental Bankers* test applies to efforts to pierce the veil between parent and subsidiary corporations, while the *Allen* factors are considered when seeking to hold a shareholder personally liable. *Hatfield v. Allenbrooke Nursing and Rehab. Ctr., LLC*, No. W2017-00957-COA-R3-CV, 2018 WL 3740565 (Tenn. Ct. App., Aug. 6, 2018). *See also*, *Schlater*, 833 S.W.2d at 925 (stating that the *Continental Bankers* test address parent/subsidiary relationships and was therefore inapplicable to the corporation/shareholder relationship). "Though the Tennessee Supreme Court has not squarely addressed the issue, when 'an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'" *Church Joint Venture v. Blasingame*, 947 F.3d 925, 932 (6th Cir. 2020) (quoting *West v. AT&T*, 311 U.S. 223, 237 (1940)). There is no persuasive data that leads the Court to conclude that the Tennessee Supreme Court would apply the *Allen* factors to veil piercing between a parent and a subsidiary.

---

[2] The Allen factors are: (1) whether there was a failure to collect paid in capital; (2) whether the corporation was grossly undercapitalized; (3) the nonissuance of stock certificates; (4) the sole ownership of stock by one individual; (5) the use of the same office or business location; (6) the employment of the same employees or attorneys; (7) the use of the corporation as an instrumentality or business conduit for an individual or another corporation; (8) the diversion of corporate assets by or to a stockholder or other entity to the detriment of creditors, or the manipulation of assets and liabilities in another; (9) the use of the corporation as a subterfuge in illegal transactions; (10) the formation and use of the corporation to transfer to it the existing liability of another person or entity; and (11) the failure to maintain arms length relationships among related entities. *Allen*, 584 F. Supp. at 397.

The Tennessee Supreme Court has applied the *Allen* factors in only two cases: *CAO Holdings, Inc. v. Trost*, 333 S.W.3d 73 (Tenn. 2010) and *Rogers v. Louisville Land Co.*, 367 S.W.3d 196 (Tenn. 2012). Both cases involving efforts to hold sole shareholders personally liable for the debts or actions of the corporation. When considering whether to disregard the corporate form as between a parent and subsidiary, the Court has applied the *Continental Bankers* test. *See e.g., Electric Power Board of Chattanooga v. St. Joseph Valley Structural Steel Corp.*, 691 S.W.2d 522, 526 (Tenn. 1985) (applying *Continental Bankers* to determination of whether to "disregard the separate entity of a subsidiary corporation and fix its liability on the parent corporation"); *Stigall v. Wickes Machinery*, 801 S.W.2d 507 (Tenn. 1990) (applying *Continental Bankers* to consideration of veil piercing between affiliated corporations); *Gordon v. Greenview Hosp.*, Inc., 300 S.W.3d 635 (Tenn. 2009).

*Continental Bankers* requires that the parent corporation "exercises complete dominion over its subsidiary," "at the time of the transaction complained of" and that "such control must have been used to commit fraud or wrong, to perpetuate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of a third parties' rights." Franklin concedes it cannot meet either element of this test.

Even if the Court were to apply the *Allen* factors as Franklin advocates, the cases applying the *Allen* factors do not stand for the proposition that the corporate form will be disregarded to impose liability on a successor owner, whether it be a corporate parent or shareholder, of an insolvent corporation. Nor is this a case in which the equities otherwise call for piercing the corporate veil to avoid injustice. Franklin does not assert that Layne or Hailey used the corporate entity to avoid obligations. *See Boles v. Nat'l Dev. Co., Inc.*, 175 S.W.3d

226, 244 (Tenn. Ct. App. 2005) (piercing the veil to reach the controlling shareholder is appropriate when the corporate entity is used to avoid his obligations) (citing *Muroll Gesellschaft M.B.H. v. Tennessee Tape, Inc.*, 908 S.W.2d 211, 213 (Tenn. Ct. App. 1995)). "[I]f an unsatisfied judgment were the only fact necessary to establish injustice, the corporate form would be disregarded in virtually every case." *Marshall v. Jackson*, No. M2007-01764-COA-R3-CV, 2008 WL 5156312, at * 9 (Tenn. Ct. App. Dec. 8, 2008) (citing *Sea-Land Svcs., Inc. v. Pepper Source*, 941 F.2d 519, 522-23 (7th Cir. 1991)). When the record shows no evidence of "unjust enrichment of shareholders or the sanction of scheme to transfer assets out of a corporation to avoid liabilities" and the party seeking to pierce the veil can show little more than the fact that it remains an unpaid creditor, such a showing falls short of establishing that the corporate form was used to promote injustice. *Id*.

Franklin has failed to establish a genuine issue of material fact on the issue of piercing the corporate veil between Layne and Hailey to hold Layne responsible for the pre-acquisition liabilities of Hailey.

**D. Fraudulent Transfer**

The Tennessee Uniform Fraudulent Transfer Act ("TUFTA"), Tenn. Code Ann. §§ 66-3-306, defines a constructively fraudulent transfer (i.e. a transfer that is actionable without proof of actual intent to defraud) as follows:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer without receiving reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or because insolvent as a result of the transfer or obligation.

18

Tenn. Code Ann. § 66-3-306(a).

TUFTA is a remedial statute providing a means of collecting a debt when the debtor has fraudulently transferred assets. The statute requires first and foremost a transfer made by a debtor. TUFTA defines a "debtor" as a "person who is liable on a claim." Tenn. Code Ann. § 66-3-303. "Creditor" is broadly defined as a person who has a "right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." *Id*. A debtor is insolvent "if the sum of the debtor's debts is greater that all of the debtor's assets, at fair valuation." Tenn. Code Ann. § 66-3-303. The remedies available for a constructively fraudulent transfer are generally limited to avoidance of the transfer to the extent necessary to satisfy the creditors claim or attachment of the transferred assets. Tenn Code Ann. § 66-3-308. Certain equitable remedies are also provided for in the statute. *Id*.

With the exception of establishing Hailey as a debtor, as it has not yet been established that Hailey is "liable on a claim," Franklin has provided sufficient evidence that it is a "creditor" within the broad definition of the statute, and that Hailey became insolvent as a result of the transfer. Contrary to Plaintiffs' assertion, expert testimony on the issue of insolvency is not required at this stage of the litigation.

Plaintiffs argue the "claim arose before the transfer was made" only if Hailey had knowledge of the facts upon which the claim is based before the transfer. Without deciding whether this is the appropriate legal standard, such a determination would certainly present questions of fact. Franklin discovered the pipe failure before the assets were sold, but did not formally notify Layne and Hailey of the failure until just after the sale. The 2017 sale of assets

was finalized on April 30, 2017. (SOF, Doc. No. 83, ¶ 63). Franklin discovered the first pipe failure in February 2017, and a second failure on April 25, 2017. (*Id*., ¶¶ 191, 192). On May 9, 2017, Franklin sent notice of the failure and a request for participation in the repairs to Layne and Hailey. (*Id*., ¶ 196). Whether Hailey or Plaintiffs knew of the potential claim before receiving the letter from Franklin presents a question of fact.

Franklin has established sufficient evidence on the claim that the 2017 asset sale was a constructively fraudulent transfer to survive summary judgment.

### IV. CONCLUSION

Franklin has proposed a number of theories under which Plaintiffs could be liable for the allegedly defective work performed by Hailey. To survive summary judgment, Franklin needed to show a genuine issue of material fact as to at least one of these theories. As stated above, Franklin has shown an issue of material fact as to whether Plaintiffs are liable for the debts of Hailey on the "mere continuation" theory of successor liability. The claim that TUFTA provides a means of recovery against Plaintiffs also survives. For the reasons stated, Plaintiffs' Motion for Summary Judgment (Doc. No. 61) is **DENIED**.

An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE