# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| LAYNE CHRISTENSEN COMPANY & LAYNE HEAVY CIVIL, INC., | ) ) ) |
| **Plaintiffs,** | ) NO. 3:17-cv-01236 ) |
| v. | ) JUDGE CAMPBELL ) MAGISTRATE JUDGE FRENSLEY |
| CITY OF FRANKLIN, TENNESSEE, | ) ) |
| **Defendant.** | ) |

## MEMORANDUM AND ORDER

Pending before the Court is Plaintiffs' Motion to Reconsider the Court's Order Denying Summary Judgment. (Doc. No. 109). Specifically, Plaintiffs seek reconsideration of the portion of the Court's ruling (Doc. Nos. 106, 107) that found questions of fact on the applicability of the mere continuation exception to successor liability. For the reasons stated below, the Motion is **DENIED**.

## I. FACTUAL BACKGROUND[1]

Layne Christensen Company is focused on water resources and related infrastructure and has business operations throughout the United States and abroad. (SOF, Doc. No. 83, ¶ 2). Layne Christensen wholly-owns multiple subsidiaries, including Layne Heavy Civil, Inc. (together, "Layne"). (*Id.*, ¶¶ 3, 4). Layne Heavy Civil wholly-owns W.L. Hailey & Company, Inc. ("Hailey"). (*Id.*, ¶ 9). In 2002, before Hailey was owned by Layne, Hailey entered into a contract with the City of Franklin ("Franklin") to construct a gravity sewer pipeline. (*Id.*, ¶ 7). Hailey last worked on the project in 2003 or 2004. (*Id.*, ¶ 8).

---

[1] A more complete summary of the facts is available in the Court's Memorandum Opinion addressing Plaintiffs' Motion for Summary Judgment. (*See* Doc. No. 107).

In October 2009, Layne Heavy Civil, then called Reynold, Inc., purchased Hailey in a stock acquisition. (*Id.*, ¶¶ 9-11). At that time, Hailey had $27 million in assets and approximately $80 million in annual revenue. (*Id.*, ¶ 173).

In 2012, as a part of a marketing initiative branded "One Layne," Layne changed the names of both Reynolds and Hailey to Layne Heavy Civil, Inc. (*Id.*, ¶¶ 4, 52-53, 122-124).[2] After the name change, Hailey's various state contractor licenses were not renewed and work previously bid under Hailey's name and licenses was bid by Layne Heavy Civil, Inc. (*Id.*, ¶ 125-26).

By 2012, the officers and directors of Hailey also served as officers and directors of Layne Heavy Civil, Inc. (*Id.*, ¶ 11). Franklin contends that Hailey transferred its assets to Layne. In 2012, a Layne employee, James Moffatt, sent an email stating, "[W]e have been moving all Meadors & WLH assets to Layne Heavy Civil. The 'One Layne' program provided the platform to make this move. The assets had previously been retained in Meadors and WLH primarily for tax purposes. Upon completion, all assets will be owned by Layne Heavy Civil[.]" (*Id.*, ¶ 146). Plaintiffs contend that the bulk transfer of assets out of Hailey to another Layne entity never occurred. (*Id.*). Plaintiffs do not dispute, however, that proceeds from the sales of assets in 2013 and 2014 were deposited into the Layne Christenson corporate account, or that a check for the sale of Hailey equipment was made out to "Layne Christenson Company" as the payee. (SOF, Doc. No. 83, ¶¶ 160, 161). Layne

---

[2] Reynolds, Inc.'s name was legally changed to Layne Heavy Civil, Inc., (Doc. No. 83, ¶ 4) while Hailey retained the legal name W.H. Hailey & Company, Inc., but used the name Layne Heavy Civil, Inc. (*Id.*, ¶¶ 54-56, 124). The name change announcement stated: "[Hailey] is pleased to announce that our business name will be changing from W.L. Hailey & Company, Inc. to Layne Heavy Civil, Inc. effective May 1, 2012. This change is in name only. Our business structure as well as our Federal Tax ID [] will remain unchanged." (Doc. No. 71-15). Internally, Layne also referred to Hailey as the "Midsouth Construction" division of Layne Heavy Civil, Inc. (Doc. No. 83, ¶ 57).

explains that "the proceeds would have been credited, accounted for, and reported as a gain or loss owned by [Hailey]." (*Id.*)

In April 2017, Layne Christensen sold substantially all of the fixed assets of its Heavy Civil division, including assets owned by Hailey. (*Id.*, ¶ 62). The asset purchase agreement was signed by Michael Anderson on behalf of Layne Christensen, Layne Heavy Civil, Hailey, and other selling entities. (*Id.*, ¶ 20, 63). The asset sale closed on April 30, 2017, and resulted in approximately $3.5 million in total proceeds, which was not separately allocated to the selling companies. (*Id.*, ¶ 63).

On May 9, 2017, Franklin notified Plaintiffs by letter of alleged defects in the project performed by Hailey in 2002-04. (*Id.*, ¶¶ 66-68, 196). Plaintiffs did not accept responsibility for the sewer pipe failure or participate in the repairs. (*Id.*, ¶ 198).

## II. PROCEDURAL HISTORY

Plaintiffs filed this case on September 7, 2017, seeking a declaratory judgment that Layne could not be held liable for any judgment Franklin might receive against Hailey. (*Id.*, ¶ 199; Compl., Doc. No. 1). On November 2, 2017, Franklin filed a Counterclaim also seeking a declaration as to whether one or both Plaintiffs are liable based on piercing the corporate veil or successor liability with respect to any liability Hailey might have to Franklin. (Doc. No. 17). Franklin brought suit in Tennessee state court against Hailey, the project engineer, and the pipe manufacturer on November 17, 2017. (Doc. No. 83, ¶ 200).

Plaintiffs filed a motion for summary judgment arguing that neither Layne Christenson nor Layne Heavy Civil can be held financially liable for the work performed by Hailey in 2002-04. Franklin presented a number of theories under which Plaintiffs could be liable for the alleged

3

defective work performed by Hailey. Two of these theories survived summary judgment: Plaintiffs' claim under the Tennessee Uniform Fraudulent Practices Act, Tenn. Code Ann. §§ 66-3-306, and on the "mere continuation" exception to successor liability.

Plaintiffs now seek reconsideration of the Court's interpretation and application of the "mere continuation" exception to successor liability. (Doc. No. 109).

### III. STANDARD OF REVIEW

While the Federal Rules of Civil Procedure fail to explicitly address motions to reconsider interlocutory orders, "[d]istrict courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004) (citing *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991)). Thus, district courts may "afford such relief from interlocutory orders as justice requires." *Rodriguez*, 89 F. App'x at 959 (quoting *Citibank N.A. v. FDIC*, 857 F.Supp. 976, 981 (D.D.C.1994)) (internal brackets omitted). Courts traditionally will find justification for reconsidering interlocutory orders when there is: (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct clear error or prevent manifest injustice. *Louisville/Jefferson Cty. Metro Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 389 (6th Cir. 2009) (citing *Rodriguez*, 89 F. App'x at 959). This standard "vests significant discretion in district courts." *Rodriguez*, 89 F. App'x at 959 n.7. District courts reviewing motions to reconsider interlocutory rulings "at a minimum" require that there be some clear error in the court's prior decision or that the movant put forth an intervening controlling decision or newly discovered evidence not previously available. *Al-Sadoon v. FISI\*Madison Fin. Corp.*, 188 F. Supp. 2d 899, 902 (M.D. Tenn. 2002).

4

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper question of fact. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the trier of fact could reasonably find for the nonmoving party. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003).

## IV. ANALYSIS

The motion for reconsideration raises new arguments regarding the applicability of the mere continuation exception. On summary judgment, the parties agreed that in Tennessee an acquiring corporation will be deemed a mere continuation of the predecessor corporation if: (1) a corporation transfers its assets; (2) the acquiring corporation pays less than adequate consideration for the assets; (3) the acquiring corporation continues the selling corporation's business; (4) both corporations share at least one common officer who was instrumental in the transfer; and (5) the selling corporation is left incapable of paying its creditors. (*See* Def. Br., Doc. No. 62 at 10, n. 9 (citing *Signature Combs*, 331 F. Supp. 2d 630, 641 (W.D. Tenn. 2004)); Pl. Resp., Doc. No. 69 at 21 (citing *Rxar Co., LLC v. Rheumatology Assocs., P.A.*, No. 3:14-C-0789, 2017 WL 1511045, at

5

*2 (M.D. Tenn. Apr. 27, 2017)); *see also*, Def. Reply ("Franklin correctly sets out the five elements it had to demonstrate to survive summary judgment…").[3]

In support of their motion for summary judgment, Plaintiffs advanced the follow reasons the mere continuation exception does not apply: (1) the asset transfer must be via a sale, not a "mere transfer"; (2) there is no evidence that the asset transfer was for less than adequate consideration; (3) there was no evidence that the transfer left Hailey unable to pay its creditors; (4) Layne did not continue Hailey's operations because Hailey continued to operate and book revenue through the 2017 asset sale; and (5) Franklin did not identify a pre-acquisition Hailey officer who became an officer of Layne post-acquisition. (Doc. No. 62 at 10; Doc. No. 82 at 7-8).

The Court found that Franklin provided sufficient evidence of each of the elements of the mere continuation exception to raise questions of fact for the jury on whether Layne was a "mere continuation" of Hailey. (Doc. No. 107, 108).

In the motion for reconsideration, Plaintiffs contend the Court's ruling was in error and raise new arguments regarding the applicability of the mere continuation doctrine. Specifically, rather than apply the five elements from *IBC Mfg.*, Plaintiffs argue that the Court should instead apply the mere continuation doctrine as stated in *Vance v. McNabb Coal & Coke Co.*, 20 S.W. 424, 427 (Tenn. 1892). Relying extensively upon *Vance*, Plaintiffs argue that the purpose behind the mere continuation exception is to prevent corporations from executing a scheme to evade debts,

---

[3] Both *Signature Combs* and *Rxar* rely upon *IBC Mfg. Co. v. Velsicol Chem. Corp.*, No. 97-5340, 1999 WL 486615, at *3 (6th Cir. Jul. 1, 1999), which in turn cites *Ed Peters Jewelry Co. v. C & J Jewelry Co.*, 124 F.3d 252, 268 (1st Cir. 1997).

6

and that because there is no evidence of a scheme to evade debts here, application of the mere continuation exception "thwarts the purpose" behind the doctrine.

In addition, Plaintiffs seek to add additional details to the elements of the mere continuation exception. They assert that the transfer of assets must be a sale, not merely a transfer, and that it must include all or substantially all of the assets of the transferring corporation. (Doc. No. 110 at 8). Plaintiffs also contend that the elements must exist contemporaneously. Specifically, Plaintiffs argue that there must be "(1) a sale of the debtor's assets, which (2) leaves it unable to pay its creditors, and then (3) continuation of the business by the acquiring corporation." (*Id*. at 10).

As stated above, these are new arguments not presented on Plaintiffs' motion for summary judgment. Generally, courts will not reconsider a decision based on arguments not presented by a party in its prior motion. *See Al-Sadoon*, 188 F. Supp. 2d at 901-02. The Court does not find cause to do so here where, even under the newly asserted standards advanced by Plaintiffs, the Court would not alter its summary judgment ruling.

Plaintiffs cite *Vance v. McNabb Coal & Coke Co.*, 20 S.W. 424, 427 (1892), as the foundational Tennessee case establishing the mere continuation exception to successor liability. While *Vance* undisputedly establishes that a corporation that is formed for the purpose of allowing the predecessor corporation to escape liability on its debts, is deemed to have assumed the debts and liabilities of its predecessor, the mere continuation exception is not so limited.

Plaintiffs identify two cases that restate the rule of law articulated in *Vance*: *Siegel v. Bible*, No. C.A. 1389, 1991 WL 72728, at *4 (Tenn. Ct. App. May 8, 1991), and *Bishop v. Dura-Lite Mfg. Co.*, 489 F.2d 710, 711 (6th Cir. 1973). Both *Siegel* and *Bishop* involve the creation of a new

7

corporation for the purpose of avoiding liability.[4] These cases, however, do not persuade the Court that this is a required element of the mere continuation exception.

Plaintiffs argument regarding the timing of the elements of mere continuation focuses on the gap in time between the alleged transfer of assets and continuation of business in or around 2013 and the evidence on insolvency in 2018. Plaintiffs argue that there "must be continuation of the business of the debtor (by using the debtor's assets) while simultaneously, the debtor is incapable of paying its creditors." (Doc. No. 110 at 10 (citing *Vance*, 20 S.W. at 427). Even under the standard advanced by Plaintiffs, when considered in the light most favorable to the defendant, the evidence is sufficient to raise a question of fact for a jury. Franklin provided evidence that at the time of the 2009 acquisition, Hailey had $27 million in assets and approximately $80 million in annual revenue. In 2018, Hailey's only asset was an intercompany receivable of approximately $2.2 million that Layne stated it has no intention of paying. The Court previously found that this was sufficient evidence to raise a question for the trier of fact on the issue of whether the purported asset transfers rendered Hailey incapable of paying creditors and does not now find cause to reconsider that decision.

Plaintiffs argue that Franklin must show that Hailey transferred all or substantially all of its assets to Layne and that because Franklin concedes that the 2017 sale to Rencon divested Hailey of the remainder of its assets, any previous transfers could not have been all or substantially all of

---

[4] Aside from the restatement of the law articulated in *Vance*, *Seigel* bears no relevance to the case at bar. In *Seigel*, the court rejected the plaintiff's attempt to impose successor liability even though the new corporation was organized for the "plain purpose of which it stands accused" – to avoid paying the plaintiff a percentage of the net proceeds of the business the dispositive issue was one of contract interpretation. 1991 WL 72728, at * 4.

Hailey's assets. (Doc. No. 110 at 8). Plaintiffs point to Franklin's agreement that the 2017 sale included assets "still designated internally on some documents at Layne as Hailey's." Given the muddied allocation of assets between the companies, and the non-specific description of the assets sold in 2017, even if Franklin must show that Hailey transferred all or substantially all of its assets to Layne, there remains a question of fact for the jury on this issue. (*See* Doc. No. 83, ¶ 62 (stating only that the 2017 asset sale included assets owned by Hailey)).

Finally, Plaintiffs contend that the Court erred in relying upon third party sales to support a mere continuation theory. (Doc. No. 110 at 6-7). The Court did not state that the sale of assets to a third party constituted a transfer of those assets to Plaintiffs, only that Franklin has submitted sufficient evidence to raise a question of fact regarding insufficient consideration. (Doc. No. 107 at 12-13).

## V. CONCLUSION

For the reasons stated, the Court finds no cause to alter is Order on Plaintiffs' motion for summary judgment. Accordingly, the Motion to Reconsider (Doc. No. 110) is **DENIED**.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDG